UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FIRST MERCURY INSURANCE COMPANY,    :
     :
       Plaintiff    :
     :
    - against -    :
     :
613 NY INC. and CEZARIN NDREKA,    :
     :
       Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 15, 2013

11 Civ. 2819 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

       This is an insurance coverage dispute in which Plaintiff First Mercury Insurance Company ("First Mercury") seeks a declaratory judgment that it does not have to provide insurance coverage because it did not receive timely notice of Cezarin Ndreka's claim. The parties filed cross motions for summary judgment. For the reasons below, the Court DENIES both parties' motions for summary judgment.

FACTUAL BACKGROUND[1]

       First Mercury is an excess lines carrier which is not licensed in New York. (613 NY Inc. and Ndreka 56.1 ¶¶ 56, 57.) It issued a commercial general liability policy ("Policy") to Hagivah, Inc. as the named insured covering the period from March 7, 2006 to March 7, 2007. (First Mercury 56.1 ¶ 9.) Defendant 613 NY Inc. is an additional insured under Hagivah's policy.[2] CoverX Corporation ("CoverX") is an operating division of First Mercury that

---

[1] Facts are taken from the parties' statements of material facts not in dispute, submitted pursuant to Local Rule 56.1, unless otherwise noted.

[2] Hagivah is a contractor and 613 is an affiliated owner/developer. (Transcript of December 5, 2012 Oral Argument at 2:7-24; 7:13-18.) There is no dispute that First Mercury insures 613 NY Inc. (Id. at 3:23 to 4:2.)

underwrites policies.  (Id. ¶ 39.)  Because First Mercury is unlicensed in New York, it must

retain the services of brokers licensed in New York.  (Id.)  For the Hagivah policy, CoverX/First

Mercury retained Brooks Insurance Group ("Brooks").  (First Mercury 56.1 ¶¶ 23-24.)  Under

this arrangement, Brooks produced proposals of insurance business for CoverX, which retained

all authority over their approval.[3]  (Id. ¶ 24; Coogler Aff. Ex. I, Broker Agreement).  Brooks

acted as a wholesale broker to Worldwide, a retail broker, who sold policies directly to the

insured.  (Id. ¶ 43.)  In essence, Brooks was a middleman between First Mercury, the carrier, and

Worldwide, the retail broker.

    Ndreka was employed by A&M Masonry Corp. to perform renovation work at 578 Van

Siclen Avenue, Brooklyn, New York, which is managed by 613 NY Inc.  (Id. ¶ 5.)  On March

31, 2006, Mr. Ndreka fell from a scaffold on which he was working, sustaining serious injuries

to his head, neck and spine.  (613 NY Inc. and Ndreka 56.1 ¶¶ 89, 90; Coogler Aff. Ex. A ¶ 45;

Stewart Aff. Ex. 5.)

    Ndreka served his Complaint on 613 NY Inc. on November 23, 2007.  (First Mercury

56.1 ¶ 7.)  On November 30, 2007, 613 NY Inc. notified WorldWide of Mr. Ndreka's action and

forwarded a copy of the Complaint.  (Id. ¶ 44.)  Consistent with its general practice, on

December 3, 2007, it forwarded two Acord forms[4] that it prepared and a copy of the Complaint

via overnight UPS delivery to Brooks.  (Id.; 613 NY Inc. and Ndreka 56.1 Counterstatement ¶

---

[3] "[A]ll proposals for insurance business submitted by Broker to [CoverX] shall be subject to approval and
acceptance by CC and all decisions regarding the acceptance, approval and discretion and issuance of any insurance
coverage shall be made by CC . . . in its sole discretion."  Id. § 1.3.

[4] An Acord form is a standard industry form used to provide notice of liability.

44.)  One form identified Alea North America Specialty Insurance Company ("Alea")[5] as the insurer and the other identified First Mercury.  (First Mercury 56.1 ¶ 52.)  Brooks had a practice of handling notice-of-claims from Worldwide by forwarding them and accompanying documents to First Mercury.  (Id. ¶ 51.)  Whether it observed that practice here is a subject of dispute.  (Tr. at 4:15-18.)  613 NY Inc. maintains that Brooks may well have sent notice to First Mercury.  (Id. at 17:24 to 18:3; 19:8-12.)  First Mercury argues that it did not receive notice of Ndreka's claim until February 23, 2009, and not from Brooks, but Group4 Consulting, Inc. a third party claim administrator for Alea.  (First Mercury 56.1 ¶¶ 16, 36.)[6]

Defendant 613 NY Inc. argues that the 2007 notice to Brooks was notice to First Mercury: First Mercury's course of conduct cloaked Brooks with apparent authority to receive notices of claims in New York.  First Mercury responds that it is entitled to prompt notice to itself or to CoverX, its agent for receipt of claims.[7]  Further, failure to follow the proscribed

---

[5] Alea is another insurer for 613 NY Inc.  Alea provided Commercial General Liability and Products insurance for "Completed Operations."  While First Mercury covered liabilities arising out of construction activities, Alea covered liabilities arising after the completion of construction renovations, and after the properties have been occupied. (Coogler Aff. Ex. E, 1-2.)

[6] For the first time at oral argument, 613 NY Inc. suggested that the February 23, 2009 notice to CoverX was timely. (Tr. at 20:7-12.)  It was not.  Although the reasonability of a delay in notice is usually a factual determination that is reserved for the jury, "where there is no excuse for the delay and mitigating considerations are absent, the issue may be disposed of as a matter of law."  Heydt Contracting Corp. v. Am. Home Assurance Co., 536 N.Y.S.2d 770, 772 (N.Y. App. Div. 1989).  The First Mercury Policy requires notification "as soon as practicable" and "immediately." (Coogler Aff. Ex. D.)  There is no question that an unexcused 15-month delay constitutes late notice as a matter of law.  Contrary to Defendants' contention at conference, First Mercury is not required to show that it suffered prejudice.  Under New York law, an insurer may deny coverage based on untimely notice, whether it is prejudiced by the delay or not.  Sec. Mut. Ins. Co., 293 N.E.2d at 78.  In July 2008, N.Y. Ins. Law § 3420(a)(5) was amended to require a showing of prejudice, but this amendment only applies to policies issued on or after January 17, 2009. Rockland Expo. Inc., 445 Fed. Appx. at 389 n.1.  Since the coverage period here is March 7, 2006 to March 7, 2007, the prejudice requirement does not apply.  (Coogler Aff. Ex. D Declaration Page.)

[7] The Notice Provisions state that First Mercury must be notified "*as soon as practicable*" after an "an offense which may result in a claim" (Section IV—Commercial General Liability Conditions 2.a.) and if any "claim is made or 'suit' is brought against any insured." (Id. § 2.b.)  The Notice Provisions' terms also require the insured to "*immediately* send [First Mercury] any demands, notices, summonses or legal papers received in connection with the

process for notice means that notice was not given.  Finally, Brooks had no apparent authority to receive notice as First Mercury's agent.

**DISCUSSION**

Summary judgment may be granted where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995).  When parties cross-move for summary judgment, the standard is the same.  <u>Nat. Res. Def. Council v. Evans</u>, 254 F. Supp. 2d. 434, 438 (S.D.N.Y. 2003).  "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party."  <u>Id.</u>

I.   Ambiguity in the Policy's Notice Provision

Was notice to Brooks the broker notice to First Mercury?  The contract language in the Policy arguably conferred agency on Brooks but ambiguities in its provisions present an issue of fact for trial.

---

claim or 'suit.'"  (Id. § 2.c.)  Similarly, the Declaration Page—the front page of the policy—requires all claims to be reported to CoverX Corp. "*immediately*" but does not state a specific deadline.  (<u>Id.</u>)  The Claims Notification Endorsement directing claims to be sent to CoverX is silent with regard to any sort of time frame.  (<u>Id.</u>)

4

"[O]nly where [contract] language and the inferences to be drawn from [it] are unambiguous may a district court construe a contract as a matter of law and grant summary judgment accordingly." <u>Alexander & Alexander Servs., Inc.</u>, 136 F.3d 82, 86 (2d Cir. 1998). Ambiguity is a question of law for courts to decide. <u>Cambridge Realty Co.</u>, 421 Fed. Appx. 52, 53; 2011 U.S. App. LEXIS 9315, at *4-5 (2d Cir. 2011) (summary order).

> It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion.

<u>Id.</u>

613 NY Inc. argues a particular term in the Policy makes it ambiguous—specifically, an amendment in the "New York Changes" endorsement that recognizes notice given to "any agent of ours in New York State." (D. Br. at 9-10.) This provision provides:

> Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

(Coogler Aff. Ex. D page 37 of 52; amended para. E. to "Duties In The Event Of Occurrence, Offense, Claim Or Suit.")  According to 613 NY Inc, this provision refers to Brooks for the following reasons: the endorsement does not refer to CoverX as an agent; each reference to CoverX in the Policy lists its Michigan address; the endorsement fails to identify any New York agent; and Brooks is a New York-licensed broker, with an office in New York.  The ambiguity arises, Defendant asserts, because New York Changes endorsement provision would be rendered meaningless, unless it referred to Brooks.  Since ambiguities in insurance contracts should be resolved in favor of the insured, 613 NY Inc. argues that it is entitled to summary judgment.  At conference, First Mercury's counsel argued that Cover X is the agent for New York.  (Tr. at 14:18-20.)  But CoverX is not located in New York.  If First Mercury's argument is to be

5

accepted, the contract language would have to be changed from "agent . . . in New York State" to "agent . . . for New York State."  First Mercury also maintained that the Policy is unambiguous because it clearly refers to CoverX as its agent.[8]  However, neither CoverX nor First Mercury are located "in New York"; but Brooks is located in New York.

The Court finds that the Policy is ambiguous.  First Mercury has never had an agent in the State of New York.  (Id. ¶ 49.)  First Mercury has not identified any entity that the term "any agent of ours in New York State" can possibly refer to, and has not explained why this provision exists.  First Mercury contends that "agent of ours" does not refer to just any of its agents with a license in New York, such as Brooks.  (Id. ¶ 37.)  Essentially, its interpretation is that provision refers to no agent—an interpretation that would in fact, render the provision meaningless.  This is enough to create an ambiguity as to whether the Policy language authorizes Brooks as an additional agent for notice-of-claim purposes, and summary judgment is inappropriate.

Plaintiff argues that the court in Rockland Expo., Inc. v. Great Am. Assur. Co., 746 F. Supp. 2d 528, 536 (S.D.N.Y. 2010), considered the same language and concluded that it was not ambiguous.  That case is not analogous as the insured did not argue that the Policy authorized notice to the broker, but rather, by not referring to its agent by name in the policy, the insurer failed to correct the insured's misconception that its broker was the insurer's agent.  Id.  Here,

---

[8] For example:

- On the Declaration Page—the first page of the Policy: "Notice: In Order to Preserve Your Rights Under This Policy All Claims Must be Reported Immediately To: Cover X Corporation [address included].

- Claims Notification Endorsement: "Send all claims notifications and information to:  CoverX Corporation [address included]." (page 30 of 52)

- Service of Suit Endorsement: "[P]rocess may be served upon the authorized agent of the Company whose name and address are: CoverX [address included]" (page 8 of 52)

(Coogler Aff. Ex. D.)

the Policy can arguably be read to affirmatively authorize notice to the broker because of its reference to an "agent" in New York that could not have been CoverX.

While the existence of an ambiguity precludes granting summary judgment to First Mercury, neither is 613 NY Inc. entitled to summary judgment.  Defendant is incorrect that the only reasonable inference is that Brooks was an agent.  It is undisputed that the Policy makes no mention of Brooks by name and the Policy explicitly refers to CoverX as the authorized agent for receiving notices of claims and suits.  Defendant does not dispute this.  (613 NY Inc. and Ndreka 56.1 Counterstatement ¶¶ 13-15.)  Further, First Mercury points to the testimony of David Rosen, head of Brooks, that Brooks never served as an agent for First Mercury and did not have authority to accept notices-of-claim on First Mercury's behalf.  (Coogler Aff. Ex. P, Rosen Dep. 41:17-19; 43:3-19.)[9]  In light of this evidence, it is possible to conclude that the Policy did not authorize Brooks as First Mercury's agent to receive notices-of-claim.

II.  Brooks' Apparent Authority as First Mercury's Agent

The existence of an agency relationship is a mixed question of law and fact.

> Agency is a question of law for the court where the material facts from which agency is to be inferred are not in dispute, the question of agency is not open to doubt, and only one reasonable conclusion can be drawn from the facts in the case. However, where the facts are insufficient to support a finding of agency, or there is a dispute as to the facts, the question of agency should be submitted to the jury so that it may apply the applicable legal standard . . . to the facts, as the jury finds them.

Cohen v. Utica First Ins. Co., 436 F. Supp. 2d 517, 527 (E.D.N.Y. 2006) (citations and quotation marks omitted).

Apparent authority depends on the relevant words and conduct of the principal, not the agent:

> Apparent authority . . . arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the

---

[9] The Court notes the inconsistency in Rosen's deposition testimony, which may bear on his credibility at trial.

principal consents to have an act done on his behalf by the person purporting to act for
him.  Thus, apparent authority is normally created through the words and conduct of the
principal as they are interpreted by a third party, and cannot be established by the actions
or representations of the agent.  Accordingly, [the insured's] notice to [the broker is]
legally sufficient if there [is] some evidence of action on [the insurer's] part, or facts
from which a general authority to represent [the principal] may be inferred.  The
existence of apparent authority is normally a question of fact, and therefore inappropriate
for resolution on a motion for summary judgment.

Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 289 (2d Cir. 2003) (citations and

quotation marks omitted).  Did First Mercury, as principal, through its words or actions, create

the impression that it authorized Brooks to accept notices-of-claims?  As for conduct that could

reasonably create this impression,

an insurance broker is the agent of the insured, not the insurance company, and notice to
an insurance broker, absent exceptional circumstances . . . , is not notice to the insurer.
Such exceptional circumstances have been found in situations where the agent's role
went far beyond that of solicitor of the liability policy, and included responsibilities such
as collecting premiums, issuing the policy, and being designated as an 'agent or broker'
for the insurer.  For a broker to become the insurer's agent, there must be evidence of
some action on the insurer's part from which a general authority to represent the insurer
may be inferred.

Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F. Supp. 2d 442, 457 (S.D.N.Y.

2005) (citations and quotations omitted).

613 NY Inc. points to First Mercury's conduct that amounts to such "exceptional

circumstances" and confers apparent authority on Brooks: (1) First Mercury accepted eight prior

notices-of-claim from Brooks under the First Mercury Policy without objection; (2) First

Mercury communicated with the insured, and the insured with First Mercury, exclusively

through Brooks; (3) First Mercury wrote the Policy using Brooks' New York State excess lines

license; (4) First Mercury accepted all of the insured's premiums through Brooks; (5) First

Mercury's Quotation for the Policy identified Brooks as its "submitting agent"; (6) the New

York Changes Endorsement in the Policy authorized Brooks as First Mercury's agent in New York State.  (D. Br. at 9, 12.)

One factor that tends to support Brooks' apparent agency is that First Mercury accepted prior notices-of-claim under the Policy through Brooks.  In <u>Green Door Realty Corp. v. TIG Ins. Co.</u>, 329 F.3d 282, 290 (2d Cir. 2003), the Second Circuit vacated a grant of summary judgment in favor of the insurer, and found as evidence of an agency relationship that there were "several instances in which . . . it was the practice at [the insurance company] to allow [a broker] to accept loss notices on its behalf."  Similarly, from November 2, 2006 to September 30, 2009, Hagivah, Inc. provided eight separate notices-of-claims to Worldwide, the retail broker.  (613 NY Inc. and Ndreka 56.1 ¶¶ 80-88; Stewart Aff. Ex. 4.)  Worldwide forwarded these notices to Brooks, which in turn faxed them to First Mercury.  (<u>Id.</u>)  First Mercury does not deny receiving or accepting these notices.  (First Mercury 56.1 Counterstatement ¶ 80.)  It is not relevant that a different insured—Hagivah rather than Defendant 613 NY Inc.—sent the notices,[10] nor is it dispositive that First Mercury received notice on those occasions; what is relevant is that it appeared to 613 NY Inc. that submitting claims to First Mercury could be successfully achieved by sending notice to the broker rather than First Mercury or CoverX.  (<u>Id.</u> ¶ 76.)

A reasonable inference can be made that First Mercury acquiesced to accepting notices-of-claim through Brooks.   Ms. Crawford, First Mercury's complex claims specialist, acknowledged that she was familiar with Hagivah's eight prior claims, that Brooks was involved, and confirmed that it was "likely" that First Mercury received notice of these claims through Worldwide and/or Brooks.  (Coogler Aff. Ex. M, 67:23 to 69:7.)  Although his testimony related

---

[10] While they may be separate entities in fact, the entities are run by the same individuals—family members who manage the day-to-day operations from a shared office.  (Tr. at 7:8-25.)

to other policies that Worldwide placed with First Mercury, Mr. Breier of Worldwide testified that notices-of-claim usually reached First Mercury through Brooks, and First Mercury generally provided coverage.   (Coogler Aff. Ex. O, 54:6-20; 56:13-19.)   If First Mercury routinely accepted notices-of-claim under this Policy from Brooks, 613 NY Inc. could construe First Mercury's failure to object to this procedure as acquiescence and reasonably understand it as authorizing future notices through Brooks.  See Cohen, 436 F. Supp. at 531.[11]

        In Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d at 290, the Second Circuit concluded that a similar factual pattern creates a genuine issue of material fact, even though the broker did not have the authority to accept notices-of-claim, supported by the broker's statement that it never held itself out as an agent.   Other aspects of Brooks and First Mercury's operating relationship create a genuine issue of material fact.   See Green Door, 329 F.3d at 289 (noting that any belief as to the broker's apparent agency may have been based on the insured's perception of the working relationship between the broker and insurer).   On the one hand, First Mercury received applications for insurance policies through Brooks; when issuing policies, returned copies of quotations through Brooks; received notices to bind coverage from Brooks; and used Brooks to collect premiums.   (Coogler Aff. Ex. P., Rosen Dep. 167:11-15; 167:23 to 168:13; 178:21 to 179:12.)[12]   On the other hand, Brooks' role was limited in that Brooks did not have

---

[11] Plaintiff asserts that Brooks' prior practice of accepting notices-of-claim from Brooks is irrelevant, as agency law focuses on the principal's words and conduct, and not the agent's.  Nonetheless, *Brooks'* practice of forwarding notices is probative of *First Mercury's* practice of accepting them without comment or objection.  First Mercury's own conduct creates the appearance that First Mercury authorized Brooks to accept notices on its behalf.

[12] 613 NY Inc. relies on the Quotation for the Policy, which lists Brooks as its "submitting agent" (D. Br. at 10; 613 NY Inc. and Ndreka 56.1 ¶ 69; Stewart Aff. Ex. 3; FMI 0067.)  This fact is not conclusive on the nature of their relationship because the Quotation does not state that Brooks is the agent for notice-of-claim purposes.  "[T]he use of the term 'agent' in a contract is not conclusive as to whether an agency relationship existed."  Cohen, 436 F. Supp. 2d at 527; see also Cambridge Realty Co., LLC, 421 Fed. Appx. at 55 (the fact that the insurance proposal lists the broker as the "agency name" held not to be dispositive).  Similarly, 613 NY Inc. contends that First

authority to bind or issue policies for First Mercury without First Mercury's permission. (Coogler Aff. Ex. P, Rosen Dep. 167:6-11; Coogler Aff. Ex. O, Breier Dep. 49:20-50:10.)   The Court finds that these circumstances create triable issues of fact that preclude summary judgment.[13]

Plaintiff relies on a Broker Agreement between Brooks and CoverX, dated June 5, 2006, that explicitly disclaims any authority in Brooks for the purposes of providing notice to CoverX/First Mercury.  (Coogler Aff. Ex. I, § 3.3.)[14]  While the Agreement binds Brooks and CoverX as parties to the contract, it cannot control where 613 NY Inc. did not know about it.  An agreement between the insurer and its broker, limiting the broker's authority, does not apply to the insured, where the insured does not have access to this separate agreement.  Cohen, 436 F. Supp. 2d at 528-29.  CoverX did not send a copy of this Agreement to 613 NY Inc.  That is not a surprise because it had no reason to send copies of broker agreements to insureds.  (Coogler Aff. Ex. N. Scott Bayer Dep. 43:2-11.)  First Mercury denies having any knowledge about 613 NY Inc.'s access to the Agreement.  (First Mercury 56.1 Counterstatement ¶ 79.)   A party's

---

Mercury's reliance on Brooks' New York excess lines license suggests that Brooks was its agent.  But merely "procuring a policy from an insurer is insufficient to cause a broker to become an agent of the insurer."  Phila. Indem. Ins. Co., 379 F. Supp. 2d at 458; see also Cohen, 436 F. Supp. 2d at 527 ("Selling a policy to the insured does not by itself make the broker an agent of the insurer.").

[13] First Mercury overreaches in contending that this would leads to the conclusion that "anyone who First Mercury accepted notice from would be its agent . . . ."  (P. Rep. at 14.)  That is not the argument where First Mercury has a history of accepting notices-of-claim through Brooks, which, in combination with other indicia (e.g., accepting premiums and communicating through Brooks) created the impression that Brooks served as its agent for the narrow purposes of receiving notices-of-claim.

[14] "Broker is not permitted or authorized to bind or obligate [CoverX] or any insurance company represented by [CoverX]," which here is First Mercury.  (Id. § 1.3); "Occurrences and/or claims on policies reported by an insured to Broker . . . shall not be and is not notice to [CoverX] nor to any insurance company represented by [CoverX] . . . ." (Id. § 3.3); "Broker is at all times herein acting and performing as an independent contractor . . . and nothing contained in this Agreement shall . . . be construed to . . . create a . . . agency relationship between Broker and [CoverX] . . . for any . . . reason." (Id. § 5.3).

allegation that it lacks sufficient knowledge is insufficient to create a genuine issue of fact.  See Scholtisek v. Eldre Corp., 697 F. Supp. 2d, 445, 472 (W.D.N.Y. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 n.3 (1986)).  The Court does not consider the Broker Agreement as a relevant factor in the apparent agency analysis.

First Mercury cites to Gershow Recycling Corp. v. Transcontinental Ins. Co., 22 A.D.3d 460, 462 (N.Y. App. Div. 2005) for the proposition that "notice to a broker cannot be treated as notice to the insurer . . . .  [T]he policy requirement that the notice must be provided to the carrier trumps any informal arrangement or practice engaged in between the insureds and their brokers." Id.  In that case, there was no evidence that the broker played any role other than selling the Policy to the insured.  By contrast, here, 613 NY Inc. argues that First Mercury appeared to vest Brooks with authority well beyond merely brokering the Policy—for example, by using Brooks to collect premiums and communicate with the insured.  The combination of factors raised by 613 NY Inc. create a factual dispute.  Apparent authority is usually a factual issue not to be resolved at summary judgment, and the Court sees no exception here.  Green Door Realty Corp., 329 F.3d at 289.

III. Ndreka's Ability to Recover from First Mercury Any Judgment He Obtains Against 613 NY Inc.

The injured party, Mr. Ndreka, did not provide notice of his claim to First Mercury.  If First Mercury's March 25, 2009 disclaimer were valid against 613 NY Inc., it would operate equally against Mr. Ndreka as well.  The Court has determined that First Mercury is not entitled to summary judgment on its claim to denial of coverage due to untimely notice.  In instances where courts have extended disclaimers to injured parties for their failure to independently notify the insurer, it is based on a determination that the disclaimer was valid against the insured in the

first instance. E.g., Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 214 (2d Cir. 2004); First Cent. Ins. Co. v. Malave, 771 N.Y.S.2d 141, 142 (N.Y. App. Div. 2004). Accordingly, the Court denies First Mercury's request for declaratory judgment as to Mr. Ndreka.

## CONCLUSION

A question remains as to whether Brooks served as First Mercury's agent for receipt of notices-of-claim based on (1) ambiguities in the Policy language and (2) Brooks' pattern of behavior suggesting its authority to receive claims on First Mercury's behalf. The question is such that both parties' motions for summary judgment are DENIED.

Dated: New York, New York

January 15, 2013

SO ORDERED

PAUL A. CROTTY

United States District Judge

13